838 So.2d 600 (2003)
Barry E. KRISCHER, State Attorney, and the State of Florida, Appellants,
v.
Samuel A. FARIS, Appellee.
No. 4D02-2284.
District Court of Appeal of Florida, Fourth District.
February 12, 2003.
Rehearing Denied March 5, 2003.
Charlie Crist, Attorney General, Tallahassee, and Richard L. Polin, Assistant Attorney General, Miami, for appellants.
Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellee.
HAZOURI, J.
Samuel Faris (Faris) entered into a plea agreement with the State in May 1990, that provided for a prison sentence of twenty-five years maximum to be followed by a twenty year period of probation in exchange for his plea of no contest to two counts of attempted sexual battery and one count of lewd act. A judgment was entered and Faris began serving his sentence. Immediately prior to his release from prison in June 2000, the Office of the State Attorney filed a Petition for a Probable *601 Cause Determination and Civil Commitment based on evaluations that recommended that Faris be civilly committed as a sexually violent predator. The circuit court entered an order finding that probable cause existed to believe that Faris was a sexually violent predator. Faris was taken into the custody of the Department of Children and Families (DCFS) pending his civil commitment trial.
Faris filed a Motion to Enforce Plea Agreement, which he later amended, alleging that the commencement of the civil commitment proceedings violated the prior plea agreement in the criminal case. After a hearing, the circuit court entered an Order granting Faris's motion on the authority of Harris v. State, 27 Fla. L. Weekly D946, ____ So.2d ____, 2002 WL 731699, (Fla. 1st DCA Apr.26, 2002), and directing the State to release Faris from its custody. We reverse the trial court order and reinstate the civil commitment proceedings.
In Harris, the defendant entered into a plea agreement which provided that at the conclusion of seven years incarceration, the remainder of his sentence would be suspended and he would be placed on probation with the special condition that he complete a sex offender treatment. Id. at D946, at ____. Four days before he was scheduled to be released from prison, the state filed a petition seeking his civil commitment under the Jimmy Ryce Act[1]. The defendant argued that by pursuing civil commitment, the state breached the plea agreement. The first district agreed and held that it is immaterial that one's confinement under the Ryce Act has been held a collateral, rather than a direct, consequence of a defendant's plea. Id. at D947, at ____.
The first district applied the doctrine of equitable estoppel and reasoned that the state had represented to the defendant the sentence he would receive in exchange for his plea and the defendant relied on that representation. The first district also noted that under the Ryce Act, the state attorney is given discretion whether to file a civil commitment action. The first district reversed the trial court's order denying defendant's motion to enforce plea agreement and remanded with directions that the court specifically enforce the plea agreement. Id. at D948, at ____. The first district reasoned that nothing less than specific performance of the contract could afford the defendant justice. In addition, the first district certified the following question to the Florida Supreme Court:
MAY THE STATE INITIATE DISCRETIONARY CIVIL COMMITMENT PROCEEDINGS UNDER THE RYCE ACT (PART V OF CHAPTER 394, FLORIDA STATUTES) WHERE, BY SEEKING CIVIL COMMITMENT, THE STATE WOULD VIOLATE THE TERMS OF A PLEA AGREEMENT PREVIOUSLY ENTERED INTO WITH THE DEFENDANT?
The first district addressed the issue again on motions for rehearing and rehearing en banc in Harris v. State, 27 Fla. L. Weekly D 946, ___ So.2d ___ (Fla. 1st DCA Oct. 4, 2002). In oral argument, the state had represented that the defendant was not on probation while civilly committed. Id. at *1, at ____. However, in its motion for rehearing, the state argued that it had erred before and that the defendant was in fact on active probation while he was committed. Therefore, the state contended that it had honored the plea agreement. The first district disagreed and reasoned that the defendant's conditions of probation did not impose residential sex-offender treatment which was essentially what the civil commitment constituted. *602 The first district held that, "it cannot be said that appellant is on active probation while committed under the Ryce Act to the custody and control of the DCFS." Id.
The court held that even if it could be said that the defendant was on active probation while in the custody of DCFS, a double jeopardy issue would arise due to the change in probationary conditions. The defendant's order required sex-offender treatment, but not residential sex-offender treatment. "Thus, if appellant were considered to be on active probation while committed to the care and custody of DCFS, the terms of his probation have been improperly enhanced from nonresidential to residential sex-offender treatment without a violation of probation." Id. The first district denied the motions for rehearing and rehearing en banc and certified two additional questions to the Florida Supreme Court:
IS A PLEA AGREEMENT FOR PRISON TIME FOLLOWED BY PROBATION VIOLATED WHEN THE STATE LATER INITIATES DISCRETIONARY CIVIL COMMITMENT PROCEEDINGS UNDER THE JIMMY RYCE ACT (PART V OF CHAPTER 394, FLORIDA STATUTES)?
IN THE CIRCUMSTANCES DESCRIBED IN THE FIRST QUESTION, IS THE STATE BARRED BY EQUITABLE ESTOPPEL FROM SEEKING CIVIL COMMITMENT?
At the time that the trial court granted Faris' amended motion to enforce plea agreement, the Florida Supreme Court had not answered the certified questions posed in Harris nor had there been any contrary decision from any other district courts of appeal. However, the Florida Supreme Court has recently provided guidance on this issue. The Court's guidance was in response to this court's decision in Murray v. Kearney, 770 So.2d 273 (Fla. 4th DCA 2000). In Murray, the defendant had been convicted through a plea agreement of sexual battery on a minor child. Id. at 274. He was sentenced to incarceration followed by probation. Prior to his release from prison, he was civilly committed as a sexually violent predator under the Ryce Act. The defendant filed a petition for writ of habeas corpus in this court and argued that the commitment order was illegal since the plea agreement provided how and where he was to receive treatment after the termination of his prison sentence. The defendant requested specific performance of his plea agreement. This court noted that the commitment order was not entered in the criminal proceeding, but rather DCFS had instituted a new civil commitment proceeding, based upon clinical evaluations of the defendant's current state. This court dismissed the petition because we viewed our habeas jurisdiction as limited to determining whether the challenged order was entered without jurisdiction or was illegal. We concluded that the order of commitment was not entered without jurisdiction and/or was not illegal.
The defendant filed a petition for habeas with the Florida Supreme Court arguing that his civil commitment order was illegal and violated his right to due process because the plea agreement in his criminal case specified that he would receive sex offender treatment while on probation supervision in the community. The Florida Supreme Court granted review in Murray v. Regier, 27 Fla. L. Weekly S1008, ___ So.2d ___, 2002 WL 31728885 (Fla. Dec. 5, 2002).[2] The Court noted that while district courts have limited jurisdiction *603 over habeas claims, this limited inquiry did not foreclose constitutional challenges to pretrial detention or leave a defendant without an avenue to bring such a challenge. Id. at S1009, at ____. The Court stated:
Despite our conclusion that the Fourth District Court should have considered the merits of Murray's claim that his civil commitment order is illegal because it violates his constitutional right to due process, we conclude that Murray is not entitled to relief on this claim. The plea agreement was part of a criminal proceeding against Murray whereas the commitment order was entered in a civil proceeding based upon clinical evaluations of Murray's present state ... Thus, Murray's involuntary commitment cannot be considered continued punishment for his criminal offense, but was based upon clinical evaluations of his present state.
Id.
The Court cited to Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). In Hendricks, the United States Supreme Court addressed challenges to a similar Kansas statute that provided for the involuntary commitment of sexually violent predators. The Supreme Court recognized that commitment as a sexually violent predator constitutes a separate proceeding from the criminal action that was based on the individual's sexually violent offense. Relying on the Hendricks decision, the Florida Supreme Court held:
Thus, we conclude that any bargain that a defendant may strike in a plea agreement in a criminal case would have no bearing on a subsequent involuntary civil commitment for control, care, and treatment. Consequently, Murray's constitutional claim is without merit and he was not entitled to release from detention on this basis.
Murray, 27 Fla. L. Weekly at S1010, at ____.
Although the Murray decision arises from a habeas petition, it has direct application to the instant case. The Florida Supreme Court's holding that any bargain a defendant may strike in a plea agreement in a criminal case could have no bearing on a subsequent involuntary commitment under the Jimmy Ryce Act is controlling. We therefore reverse.
FARMER and STEVENSON, JJ., concur.
NOTES
[1] The Jimmy Ryce Act is contained in sections 394.910-931, Florida Statutes.
[2] While this case was on appeal, Jerry Regier had been appointed to replace Kathleen Kearney as Secretary of the Department of Children and Family Services.